UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Leslie Ann Shirley

      Plaintiff,

   v.                                              Case No. 1:15cv726

Commissioner of Social Security                    Judge Michael R. Barrett

      Defendant.

**ORDER**

This matter is before the Court upon the Magistrate Judge's November 3, 2016, Report and Recommendation ("R&R") which recommends that the decision of the Commissioner be affirmed and this matter be closed on the docket of the Court. (Doc. 22).

Notice was given to the parties under 28 U.S.C. § 636(b)(1)(c). Plaintiff filed objections to the Magistrate Judge's R&R. (Doc. 23).

When objections are received to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.; *see also* 28 U.S.C. § 636(b)(1).

The Magistrate Judge completed a comprehensive review of the record and the same will not be repeated here except as necessary to respond to Plaintiff's objections.

### A. Dr. Murthy

Plaintiff argues that the ALJ erred by assigning limited weight to the opinion of Plaintiff's treating physician, Dr. Murthy. The Magistrate Judge addressed this same argument in great detail and the Court finds no error in the Magistrate Judge's conclusion that the ALJ properly interpreted Dr. Murthy's opinion.

> As the Sixth Circuit has explained:
>
> In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96–2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id*.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (footnote omitted).

Here, the ALJ found that Dr. Murthy's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the record. The ALJ made this finding, in part, because Dr. Murthy only saw Plaintiff one time before her date last insured ("DLI"). (Tr. 37). There was only one progress note that predated Plaintiff's DLI and that note did not support the work-related

2

limitations contained in Dr. Murthy's opinion. (Id.). Of significance, Dr. Murthy did not state the limitations were in effect prior to Plaintiff's DLI. To obtain disability benefits, Plaintiff must establish that the "onset of disability" was prior to the date his insurance status expired, or the DLI. 42 U.S.C. §§ 423(a), (c), (d)(l)(A); *See Smilh v. Comm'r of Soc. Sec.,* 202 F.3d 270 (6th Cir.1999) (citing *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988)).

Plaintiff takes issue with the ALJ's finding that Dr. Murthy's treatment notes are brief and do not support the limitations he gives. Plaintiff specifically argues the second questionnaire completed by Dr. Murthy—over a year later—is entirely consistent with the first questionnaire. The ALJ, however, properly noted that Dr. Murthy's September 2013 opinion also failed to indicate whether the limitations were present before Plaintiff's DLI. Indeed, whether the limitations were in effect prior to the DLI was a question on the form, but was not answered by Dr. Murthy. (Tr. 37).

The ALJ also discounted Dr. Murthy's opinion because he did not cite any support for his opinions. In response, Plaintiff points the testimony of Dr. Rogers who averred that "no mental health person writes down everything they hear." (Tr. 96). While this is most certainly accurate, the brief notes Dr. Murthy did choose to write down do not support the limitations he recommends. For example, in June 2012, Dr. Murthy noted that Plaintiff was "good with help of meds." (Tr. 513). In July 2012, Dr. Murthy noted that Plaintiff's medications were helping and she did not have any suicidal or homicidal thoughts. (Tr. 514). Accordingly, Plaintiff's argument in this regard is unpersuasive. Considering all of the above, the ALJ properly concluded that Dr. Murthy's opinion was not entitled to controlling weight.

Then, in coming to the conclusion that Dr. Murthy's opinion should be given "little

3

weight," the ALJ considered, among other things, the length and frequency of Dr. Murthy's treatment relationship prior to Plaintiff's DLI, as well as the consistency of Dr. Murthy's opinion with the record as a whole. As the Magistrate Judge explained, "[t]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Upon review, the undersigned agrees with the Magistrate Judge that the ALJ discounted Dr. Murthy's opinion after properly considering the factors outlined in 20 C.F.R. § 404.1527. Accordingly, Plaintiff's objections on this issue are OVERRULED.

### B. Dr. Johnson

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of Dr. Johnson. Specifically, Plaintiff argues the ALJ ignored a portion of Dr. Johnson's opinion indicating that Plaintiff is likely to show a pattern of time away from work due to mental health reasons and is unlikely to respond appropriately to coworkers. (Tr. 36).

The ALJ discounted Dr. Johnson's opinion because it was not supported by her examination of Plaintiff and was based primarily on Plaintiff's self-report. (Tr. 36). Plaintiff argues that discounting an opinion for relying on self-reported symptoms is illogical, as psychological treatment is inherently dependent on subjective complaints. Plaintiff cites *Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807 (N.D. Ohio 2009) in support of her position. Plaintiff made this same argument before the Magistrate Judge, who explained that the facts in *Winning* are distinguishable. As the Magistrate Judge explained, the treating psychologist in *Winning* saw the claimant 42 times over a two year period. In this case, Dr. Johnson examined Plaintiff on one occasion and did not review any prior mental health records. Thus, the Magistrate Judge correctly distinguished *Winning* from the instant case. And as explained more fully below, the

4

ALJ properly concluded that Plaintiff was not fully credible and thus, the ALJ was justified in discounting Dr. Johnson's opinion insofar as she relied on Plaintiff's self-reported symptoms.

Moreover, the Magistrate Judge explained that the ALJ properly considered the extent to which Dr. Johnson's opinion was supported by the objective and clinical evidence pursuant to 20 C.F.R. § 404.1527(c)(3). Plaintiff argues that the portions of the record cited to are the opinions of non-examining consultants. She asserts that Dr. Johnson's opinion is consistent with the limitations provided by Dr. Murthy. However, in light of the Court's conclusion that Dr. Murthy's opinion is properly afforded little weight, the Court concludes the ALJ did not err in discounting Dr. Johnson's opinion.

### C. Credibility

Plaintiff next argues the ALJ found Plaintiff not entirely credible with no explanation and thus, his conclusion was contrary to SSR 96-7p. Plaintiff primarily argues there is nothing in the record that refutes her testimony regarding intensity, persistence and the limiting effects of her symptoms. The Court disagrees. (*See* Tr. 33-35).

As for Plaintiff's seizure disorder, the ALJ explained that prior to Plaintiff's DLI, her seizure disorder was well-controlled. (Tr. 33). The ALJ noted a significant gap in neurology treatment – a fact potentially indicative of the severity of her seizures, or lack thereof. (Id.). Moreover, although there was a period of increased seizure activity in 2011, it did not last for the required continuous 12-month period, as exhibited by her ability to drive at some point after that. (Id.). This is not inconsistent with Plaintiff's argument that her seizure disorder fluctuates. Plaintiff asserts it is clear from the record she is suffering from seizure disorder. As the ALJ correctly noted, however, "[t]he pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the

5

claimant's residual functional capacity, as set forth above, or to preclude all work activity on a continuing and regular basis." (Tr. 33).

Finally, the ALJ explained that Plaintiff's seizure disorder does not meet the criteria necessary to deem her condition severe enough to qualify. In doing so, he examined the medical information reported by Plaintiff to her medical providers regarding her seizure disorder beginning in October 2004 through August 2013. (Tr. 28-29). He concluded that based upon Plaintiff's reports of grand mal seizures, the frequency did not satisfy the necessary requirements. As for the minor motor seizures, the ALJ explained Plaintiff's testimony that she has nine to 10 seizures per month was inconsistent with the medical records. Accordingly, Plaintiff's argument that there is nothing in the record to refute her testimony is unavailing.

As for Plaintiff's mental health, she alleges that the Magistrate Judge improperly relied on opinions of doctors who are not mental health specialists. She argues her testimony is consistent with the questionnaires prepared by Dr. Murthy and the evaluation performed by Dr. Johnson. The fact that Plaintiff's testimony is consistent with Dr. Murthy and Dr. Johnson does not change the result in light of the Court's conclusion their opinions are properly not afforded controlling weight. Nevertheless, the ALJ explained that prior to the DLI, there is little evidence to support the suicidal and homicidal thoughts she testified to at the hearing, including Dr. Murthy's initial assessment, which noted no suicidal or homicidal thoughts. And although at the hearing she claimed she suffered a significant decline, the ALJ explained there was no catalyst for this change. Likewise, and of importance, the marked, severed, and extreme restrictions cited to by Dr. Murthy relate to a period more than one year after the DLI.

As the Magistrate Judge explained, the record contains substantial support for the ALJ's

credibility determination as to Plaintiff's mental health allegations.[1] Through her DLI, her mental health providers noted that her symptoms were controlled with medication. Moreover, as the ALJ explained, she did not seek specialized psychological help until one week before the expiration of her insured status. The Magistrate Judge correctly noted failure to seek treatment is potentially suggestive of less severe symptoms. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009). Thus, while the ALJ acknowledged Plaintiff testified to significant psychological symptoms, the ALJ concluded the record did not support such symptoms prior to her DLI. The ALJ also cited additional examples as to why Plaintiff's testimony was not entirely credible. For example, Plaintiff was found to be stable enough to adopt a child in 2008. And on March 1, 2012, she stated she had never been advised to seek mental health treatment. (Tr. 35).

Accordingly, contrary to Plaintiff's opinion, the ALJ did provide specific reasons for finding Plaintiff not entirely credible. Plaintiff once again fails to differentiate between the alleged severity of symptoms prior to her DLI and the severity of her symptoms after. Therefore, upon review of the record, the Court concludes that the Magistrate Judge did not err in finding that substantial evidence supported the ALJ's credibility determination.

### D. Residual Functional Capacity Assessment

Finally, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's RFC formulation was supported by substantial evidence. Plaintiff first argues there is not substantial evidence to support the weight assigned to the opinions of Dr. Murthy and Dr. Johnson. The Court has already addressed this issue and finds Plaintiff's objections on this issue are not

---

1 Plaintiff asserts the Magistrate Judge "devotes a single paragraph reference [to] the plaintiff's allegations concerning her mental health." (Doc. 23, PageID 698). This is not an accurate statement. The Magistrate Judge explained in great detail the substantial support in the record for the ALJ's credibility determination as to Plaintiff's mental health allegations. (Doc. 22, PageID 675-77).

well-taken.

Next, Plaintiff argues the ALJ did not properly account for Plaintiff's obesity in his RFC determination. The ALJ noted as follows:

> [T]he Administrative Law Judge has considered the claimant's obesity consistent with Social Security Ruling 02-1p. Although obesity itself is not a listed impairment the potential effects that it has in causing or contributing to impairments in the claimant's body systems has been considered. Specifically, the claimant's obesity does not by itself or in combination with her other impairments meet the requirements of a listing. Based on the objective evidence the functional limitations adopted herein generously consider the claimant's weight and its effect on her ability to ambulate as well as her other body systems.

(Tr. 30). Moreover, in considering the specific evidence related to musculoskeletal complaints, the ALJ explained:

> The evidence related to these musculoskeletal complaints does not support the claimant's allegations of a need for limitations greater than those set forth in the residual functional capacity finding set forth above. Specifically, prior to 2012, there is no objective evidence supporting a severe spinal or knee impairment, and in fact, the clinical examinations support normal functionality. In addition, while there is evidence of a degenerative condition in the knees between January and April 2012, which is expected to last more than 12 months, the clinical signs continue to support functionality of at least a light exertional level. Furthermore, while there is no imaging or supportive clinical evidence to show a finding of degenerative disc disease prior to the date last insured, the claimant alleged the pain symptoms related back to approximately May 2012, which was prior to the date last insured. However, these findings only suggest a mild condition, and examination failed to demonstrate gait abnormality, reduced strength, or positive straight leg raises. As a result, the claimant's allegations of limitations in the ability to sit, stand, or walk, are not supported. Thus, taking into consideration the compounding effect of obesity, a light-level exertional capacity with occasional postural restrictions, is sufficient to fully accommodate her combined musculoskeletal impairments.

(Tr. 34). Of significance, despite the opinions of the State agency medical consultants who concluded that Plaintiff was capable of medium exertional level work with some postural and environmental limitations, the ALJ, in viewing "the record as a whole, considering claimant's obesity . . ." found Plaintiff's capabilities to be "more consistent with light level exertion."

8

(Tr. 37). Accordingly, Plaintiff's assertion that the ALJ did not consider her obesity in his RFC determination is misplaced.

With respect to Plaintiff's seizure disorder, the Magistrate Judge concluded that Plaintiff's providers regularly noted that her condition was well controlled with medication, except for a six-month period from May through November 2011. (Tr. 340-41). As explained above, the ALJ considered the records from her medical providers regarding her seizure disorder beginning in October 2004 through August 2013 in making his determination. (Tr. 28-29). Accordingly, substantial evidence supports the ALJ's decision in this regard.

Finally, the Court notes that "[a]n ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443-44 (6th Cir. 2010) (citing SSR 96–5p, 1996 WL 374183, at *3; SSR 96–8p, 1996 WL 374184, at *5; *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004)). The Court concludes that in this instance, the ALJ properly assessed Plaintiff's RFC. The ALJ again explained that the treatment record during the relevant period prior to the DLI "does not support the alleged level of functional debilitation that is demonstrated by the more recently offered evidence." (Tr. 38).

Based on the foregoing, the Court hereby **ADOPTS** the Magistrate Judge's November 3, 2016 R&R. (Doc. 22). Accordingly, the decision of the Commissioner is **AFFIRMED**. This matter shall be **CLOSED and TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                                  s/Michael R. Barrett
                                                  Michael R. Barrett, Judge
                                                  United States District Court